at all. Number 15-2190. Is that Joanne? Am I pronouncing that correct? Yes, Your Honor. And Dylan? I believe it is Dylan. Excuse me. I apologize. Take your time. No hurry. Thank you, Your Honor. Thank you. Is the Court odd and adjoined on behalf of Appellant Paul Satterfield? And with the Court's permission, I would like to reserve three minutes of my time for rebuttal. It's fine. Paul Satterfield first asserted that his trial attorney was ineffective for failing to investigate or present exculpatory eyewitnesses Eric and Grady Freeman in 1986. Just by way of background, what were his reasons for, do we know, for not bringing them in to testify? His trial counsel was ineffective, Your Honor. Did he ever give a reason? Do we know? He stated during his testimony that he attempted to contact these two witnesses but was unsuccessful in doing so. Ms. Gelb was able to find them pretty quickly, right? She was indeed, Your Honor. Trial counsel also suggested that he believed Grady Freeman's statement was not helpful because he referred solely to a light-skinned guy, was the quote from his plea statement. And he believed that sort of described Mr. Satterfield. But, of course, he never spoke to him. And Grady Freeman testified exactly opposite to that when Ms. Gelb found him, and he did testify at the post-trial motions hearing. And not only did he testify that the person he viewed was white with blonde hair, but he said it definitely wasn't Paul Satterfield. And, of course, trial counsel had no way to know that because he didn't talk to either Freeman brother. What do you make of the government's argument that he was able to reference it by way of his client's testimony reading the probable cause affidavit? Your Honor, Mr. Satterfield testified on redirect, sort of as an afterthought, only because the prosecutor brought up certain things from the search warrant itself. During cross-examination of Mr. Satterfield, he reads essentially one line or two lines from the search warrant itself referencing Ms. Eric Freeman's statement that it was a white male with blonde hair that he saw. But, of course, as the district court determined, the prosecutor mocked that argument because where is Eric Freeman? We have no idea what this is about. What's going on here? So it was totally ineffective, and it destroyed the purported strategy for sort of supposedly avoiding the harmfulness of cross-examination that would have accrued if Eric Freeman actually did testify. So essentially what you've got to rely on is that somehow McQuiggan gives you this gateway that allows you to overcome the problems that have existed so far. Do you want to address that? Yes, Your Honor. So McQuiggan, in conjunction with Rule 60B-6, standing alone or in conjunction with all of the equitable factors in this case, provide a gateway that enables… What case could you cite to us that would say McQuiggan standing alone opens up the judgment that was rendered when it became final in 2006? Correct, Your Honor. There is no case that I'm aware of that specifically holds that McQuiggan standing alone does that, but our argument has been that essentially the Rule 60B-6 test is virtually identical to the actual innocence test. The question is whether extraordinary circumstances exist to be able to remedy a miscarriage of justice. So essentially the Rule 60 test collapses into the actual innocence test, but this court doesn't need to go that far. Don't you need to show under our decision in Cox that there were other factors in addition to the intervening case that aid you? Yes, Your Honor, and we have those other factors here. And what would they be? So the underlying ineffective assistance of counsel claim itself, this is as clear of an ineffective assistance claim as this court will see. There is absolutely no investigation done or no successful investigation into talking to these two critical eyewitnesses, both of whom describe somebody who looks absolutely nothing like Mr. Satterfield. It is not a matter of skin color or race. It is a matter of the hairstyle being totally different. But keep going back to that. What about the 10-month delay between McQuiggan and when he files his Rule 60B motion? Yes, Your Honor. Is that a factor, the delay between when the extraordinary circumstance arises and or the alleged extraordinary circumstance and when relief is sought? The timing of the motion is indeed a factor to consider among all the factors under the Cox standard, but it is not a problem for Mr. Satterfield in this case for a variety of reasons. One, the sort of thing that McQuiggan was concerned about in terms of delay is presenting stale evidence. Here, the evidence itself underlying the actual innocence claim was presented at the very first possible opportunity that Mr. Satterfield had competent counsel. So there is really nothing that the 60B motion itself added to the question other than a citation to McQuiggan itself. But when something was filed after 10 months post-McQuiggan, who filed it? It was Prose at the time, right? Prose, correct, Your Honor. And so what was the reasoning that he gave for why he waited so long to bring McQuiggan to the court's attention in connection with the 60B-6? Well, there's no record of that. It wasn't addressed in the motion itself, and the district court just fairly without much analysis dismissed the entire thing after holding that McQuiggan standing alone does not constitute an extraordinary circumstance warranting extraordinary relief. In Doe, it was five months. I don't know what the answer is, but 10 months is getting to be a fairly long period of time. So two things, Your Honor. One is Mr. Satterfield was attempting to raise this exact argument throughout the entirety of his first habeas proceedings. He raised it in the district court, and he actually raised it on appeal to this court, but that specific argument wasn't addressed in this court's initial opinion. And this is the entire time he was Prose, right? Correct, Your Honor. So should we give him more deference, so to speak, because he was Prose? Absolutely, without question, Your Honor. We have specifically argued that this 10-month delay, most of the cases that the Commonwealth has cited for purposes of showing that a delay was unreasonable were counseled cases, and, in fact, some of them were counseled capital cases. Here, Mr. Satterfield, after unsuccessfully trying to raise this, including in this court, throughout the entire pendency of his first habeas litigation, 10 months is not some extreme delay in the grand scheme of things, especially considering all the underlying facts and circumstances. In fact, it was about 90 days, and Judge Barry emphasized that unless it's brought within reasonable time of that decision being made, the motion will fail. So to me, 10 months is a lot longer than 90 days. No question, Your Honor. COT, of course, was also a counseled case, and it was an aggravator for a capital case. So that certainly, I think, comes into the analysis. But if the court has concerns about 10 months and feels that a record needs to be developed on the issue, certainly it is within the court's power to remand and have an explanation for it. One other thing that would have to be explained, if that were to occur, is you also have like a 10- or 11-year problem in addition to a 10-month problem. That is, I think I was on the panel that had the first Satterfield matter, and there I think we concluded that he could not show due diligence required for admirable tolling of the time-barred habeas. Now, admittedly, it's a different issue, but why isn't the concept the same applied here? It is a totally different issue, Your Honor. Mr. Satterfield actually raised his actual innocence argument from the very first moment he filed his federal habeas petition. The question of reasonable diligence for equitable tolling really had to do with whether he was diligent in pursuing his state court remedies because none of this time when his King's Bench petition was pending was tolling ultimately the statute for federal purposes. So because none of that was pending and then his federal habeas corpus petition was filed late as a result, that is where the diligence comes in there. But again, in McQuiggan, the entire purpose of McQuiggan is to overcome a statute of limitations failure. You can overcome a one-year statute of limitations failure by establishing the McQuiggan gateway or the Schlute gateway standard. And so it would be very strange to suggest that you could overcome a one-year delay in failing to file on time because of a 10-month delay in failing to file the 60B motion or in terms of a failure to be reasonably diligent in pursuing state court remedies initially or file the federal habeas petition on time initially. What kind of evidence would you put before the district court if you were to develop a record further on this matter, if there were a remand? Well, on the actual innocence claim, Your Honor, it remains to be seen. Mr. Satterfield was pro se during the entirety of his district court proceedings initially. And so we would perform whatever further investigation we would be able to perform and whatever else would come of it. But we submit and have argued that the record as it stands before the court now is sufficient to meet the actual innocence gateway. Now, Mr. Satterfield recently filed a motion with this court. Are you familiar with that motion? Yes, Your Honor, I am. What's your position with respect to his request that we stay in this case and remand to the district court? It is a strategy matter within the purview of counsel. If the court has further concerns about that or would be interested in hearing further from us, we would be happy to follow it in response to it. Why don't you do that? Okay, yes, Your Honor. If you would, try to get us something within the next week, if you would. Yes, Your Honor, absolutely. You brought the recent Buck decision from the Supreme Court to our attention. Why? Well, Buck, Your Honor, has countered several arguments that the Commonwealth has made and supports this court's jurisprudence in the Rule 60 arena. So first of all, the Cock decision and this court's longstanding jurisprudence about taking everything into account is clearly affirmed by Buck. But more importantly, Buck totally negates the Commonwealth's argument that it is improper to take into consideration the underlying federal constitutional claim in considering a Rule 60 motion. Buck, in fact, rules on the underlying constitutional claim in that case, also an ineffectiveness claim, before ever ruling on the 60B motion and, in fact, incorporates the merits of the ineffectiveness claim into the discussion of the 60B motion. That's like an extraordinary circumstance. Absolutely, Your Honor. As part of the totality of the circumstances, as one of the factors showing extraordinary circumstances. I hear you have an opinion from a district court judge finding ineffectiveness. Absolutely, Your Honor. This is a valid claim. This court's COA grant, in fact, refers to Mr. Satterfield's claim as a valid claim of ineffective assistance of counsel. As I've said, it is a very well-supported, about-as-clear-cut ineffectiveness claim, as you will see. And it is also a strong actual innocence claim. A hundred percent of the eyewitnesses said, not only this wasn't the guy, but it looks nothing like the guy. And there is not a lot of other evidence. This is a tremendously weak case. What about his statement to his tennis partner? Your Honor, it is an incredibly odd confession, a year after the fact, to a total stranger. Just the circumstances of this confession, assuming it happened at all, are enough to at least give a jury sort of pause about, hey, what's going on here? He doesn't deny that he gave this statement to Mr. Edwards. He doesn't deny that he spoke with Mr. Edwards. About the crime involved? He absolutely denies that he confessed to it. He said he was discussing having been a suspect of this crime, but that he absolutely did not confess to Mr. Edwards, that he, in fact, committed this crime. It corroborates the gun issue, right, and the bullets? Yes, Your Honor. There is this issue that he purchased bullets around that time, but he explained that during his testimony. He said he was shopping for a new gun. And if this court looks at House v. Bell, for example, that case just proves, I think, perfectly in why it is, why the case meets the Shloop standard. There was a tremendous amount of evidence remaining in House that there was absolutely no explanation for, yet the Supreme Court found the Shloop gateway net in that case. And if you end up in federal habeas proceedings, there is always going to be some evidence of guilt. Otherwise, you wouldn't be here in the first place. So you're always going to have something that you're going to have to overcome. I see that my red light is on. Thank you. We'll meet you back in the rebuttal. By the way, I said to do something, if you're filed within the next week, make it a week from tomorrow. Yes, Your Honor. 5 p.m. next week. Thank you very much. Ms. Dillon? Good morning, Your Honors. And may it please the Court, Simran Dillon on behalf of the Commonwealth Appellees. You know, in Cox, we rejected any categorical bar to Rule 60b, Relief, when a petition relies on a change in the law governing the case. It does say it happens rarely, but that the change with more can get you, can possibly win. In this case, the question is what opposing counsels argued, essentially for a remand to develop the facts further. What's wrong with that? The question here is whether the district court abused its discretion in denying the motion. And all that Satterfield presented in the motion was the change in the law and the quicken. Do you think the court did a thorough and robust 60b analysis? I think that the court did, actually, given what was in the motion. And Satterfield today has not presented any other factors. That motion is filed by a pro se prisoner, right? That's true. But I think that this court is in the same position to assess the 60b analysis that the district court would be based on the factors that Satterfield has presented now. He has not. He's in the same position now being represented by able counsel as he was when he was doing it by himself. Given the factors that he has, that his counsel has presented now, which don't warrant 60b relief. He's presented an invalid claim of actual innocence. There is a delay of 10 months. None of the Cox factors have been met here. And so the ultimate result that the district court got to was the correct one. And for that reason, there's no need for a remand here. Do you think we should be analyzing at this time the validity of the claim of actual innocence? Yes. And I think that this court's decision in Cox is actually instructive in that sense because the court in Cox said that if the Martinez claim that is the gateway to open 60b relief is insubstantial, the analysis can essentially end there. And similarly, if the McQuiggan actual innocence claim is meritless, as it is here, the court need not consider any other factors. How is it meritless? I mean, meritless means that there ain't no merit at all. Well, I agree with that, Your Honor. I can understand somebody saying I don't think you can persuade. But here you've got a case where what they're trying to do, stripping it all away, is the critical defense evidence would be the Freeman brothers. This wasn't the person. Doesn't look anything like him. In fact, I can tell you it's not the person. What could be possibly more critical than that? And the attorney didn't follow up at all? I think it's important to actually look at what the Freeman brothers said in their statements. Eric Freeman said he saw a white man with blonde hair. Grady Freeman said he saw a light-skinned person. Let's stop there. Clearly, Mr. Satterfield is not a white man with blonde hair. That's true. However, he is a light-skinned black person with brown hair. And as the trial court found in assessing the credibility of these witnesses, they didn't have a great opportunity to actually see the assailant as he was running. It was from a half block away. It was in the dark. It was very quickly. It was only from the side. These witnesses didn't. But they were observing for more than just a few seconds, right? Perhaps no longer than 30 seconds, a minute. I'm not sure if that's exactly in the record. There might be some conflicting testimony. But it was very quickly. He was running. They didn't actually get a good look at him. And I think it's important to remember here that the trial court judge heard the commonwealth's testimony, heard the testimony of Wayne Edwards, and compared that with the testimony of the Freeman brothers and said that based on their opportunity to view, their descriptions of the assailant actually didn't rule out the possibility that it was Satterfield who they saw. But didn't the district court, reviewing the trial court's decision, find counsel effective? And isn't there testimony from the brothers, both of them saying that the shooter was white? There's inconsistent testimony about... Isn't there testimony on the record, as opposed to their statements, that the shooter was white and not black? Yes, however, and I think Eric Freeman was consistent in saying that. But, and that evidence was presented to the jury. Okay, circle back to what do we make of the district court's decision that trial counsel is clearly ineffective? I think that that decision is completely irrelevant on a 60B analysis. You don't see that as an extraordinary circumstance? No, because the question on 60B... Tell me what would be an extraordinary circumstance in your world view? Buck is an example of extraordinary circumstances. You had defense counsel putting on a witness who testified against his own client. That was ineffective assistance of counsel, and the Supreme Court factored that into the equation, didn't it? Here you have a situation where defense counsel didn't even go look for the witnesses. That's actually not true. Counsel did look for the witnesses. It was very hard, because Ms. Gelb found them pretty quickly. Well, Grady Freeman also testified that he didn't want to get involved at the time of trial. There's no effort for a subpoena, right? Ms. Gelb was able to bring them in. Actually, counsel testified that he did subpoena Eric Freeman. But an argument could be made that in this case you had a defense counsel not even trying to get the witnesses, or making a very lighthearted effort. At least in Buck, they tried to get a witness, albeit a witness that didn't go in the direction they were hoping for. So here you have even a more egregious situation where counsel didn't even go look for a witness that he knew would provide exculpatory evidence. Well, again, I would disagree. I do think that, from the record, that counsel did look for the witnesses. But I want to just take a step back here and assess whether we can even look at the ineffectiveness claim. The underlying claim, and this is a procedural gateway. The innocence claim is a gateway claim to actually get to the underlying Strickland claim. And so you take the change in the law with Moore, and it may provide, if you have the Moore, a gateway to allow the merits of ineffective assistance to be considered, right? Cox says that that's a possibility. It's a case-by-case analysis. And I think on these facts, we just don't have innocence. The change in the law doesn't even apply. We need to get to innocence, or is this a totality of the circumstances, so to speak, on our 60th day? Well, innocence is – it is a totality of the circumstances test, but innocence is essentially the crux of Satterfield's claim to get through the gateway. And I just want to emphasize how – it seems to me we're collapsing the question of whether a Rule 60B motion should be granted with the next question of whether or not the actual innocence claim excuses the untimeliness of the original habeas petition. Is that what we're doing here? We're putting them together? I think we are. The point here is that the actual innocence claim actually doesn't even apply to Satterfield on these facts. Could there be a case where a petitioner did present evidence of actual innocence that did warrant 60B relief? Perhaps. But this isn't that case. And this case isn't the vehicle to decide that. And again, I just want to emphasize how strict of a standard it is. It's not ineffectiveness. When you look at Buck v. Davis, it's saying, okay, at some point you have finality has to enter in and accommodate the respect you have for state court decisions. At the same time, you've got to weigh that against actual innocence. There's certainly a lot of evidence against Mr. Satterfield in terms of this case. But his hope, maybe his only real hope, is if the Freeman brothers testify before a jury. And that just didn't occur. Now, maybe we're conflating the two, and clearly we have to deal with 60B-6 first. I don't think there's much doubt about that. But isn't, if we remanded the 60B-6 and said, okay, consider that, would that be acceptable? And not get into any comment, really significant comment about actual innocence? I think that if this court were to remand on the basis of the ineffectiveness claim, that's. . . that the change in the law plus other factors lead us to believe that the court should have a redo of whether the gateway has been gone through adequately in order for the court, if it decides in favor of Mr. Satterfield, to then consider whether ineffective assistance comes into play. Your Honor, I don't think a remand is necessary in this case because there aren't other factors. We have McQuiggan. We don't have the plus more. And if we . . . Let me go back to Judge Mischopo's question. So what would be the, in your world, the type of factors that would allow the gateway to be gone through? Cox gave us some guideposts as to what those factors could be. But they're not the only guideposts. They're certainly not exhaustive, but I think that they're especially useful in the habeas context. And I think if we look at Supreme Court jurisprudence on this, we have the two most recent cases are Gonzales and Buck. Gonzales says the change in the law and the statute of limitations in our twos is not extraordinary. Then we have Buck, a case where essentially Buck was found to be innocent of the death penalty. I think that's one way to look at it. And we had more than that. We had a case where the prosecution had agreed to resentence every other defendant who was similarly situated except for Buck. And that's a case of extraordinary circumstances. I think Buck tells us what sort of circumstances and factors a petitioner needs to present. And if we look at the scale from Gonzales to Buck, in this case, on this fax, we're much closer to Gonzales. All that has changed since the petitioner's habeas judgment has been closed. Gonzales changed what, in effect, a rule or statute that set a, what, limitations period? Was that a procedural issue? That's about the statute of limitations. And both McQuiggan and Buck dealt with equitable issues, did they not? Yes, I would put that characterization. So it seems that there's some difference. I mean, again, you know, in the justice system, you're trying to get ultimately the real party who did it. And if there's a question, a very significant question, as to a change in the law allowing you to get to the merits, I think if you do get to the merits, speaking only for myself, I can't say nearly what the judge in Commonwealth said. This case is so vague as to be totally valueless. The argument, the Friedman Brothers testimony was so vague as to be totally valueless. Well, Your Honor, that is a state court factual finding that is binding on this court, even in an innocence analysis under 2254-81. Well, was that an analysis under Schlup? Or was it really a consideration of the Strickland claim? It doesn't matter. It's still a state court factual finding that's binding. And I would point this court to Systrom v. Rosen, which is a 2012 innocence case, 673-F3181, where this court said that the Peacebury court's factual finding about an affidavit in – But you can also grant habeas under 2254-D if it's unreasonable. But we don't even get there because this is a 60-B motion. The question is, can the ineffectiveness claim even get review here? That's ultimately what we're deciding today. Should we completely disregard the underlying ineffectiveness opinion by the district court? It just doesn't even factor into the equation in your worldview. I don't think it does, but I also want to make clear that I'm confident that we win, even on the Strickland claim here. But the question here is innocence. And innocence is a much higher standard than Strickland prejudice. Did you already lose on Strickland? Do we lose on Strickland? Did you already lose on Strickland? Before the district court. Before the district court. And that opinion was – that decision was initiated as a nullity. For different reasons, right? I mean, it wasn't – they care on the merits. We believe that that decision was wrongly decided. And I think it's clear that we win on Strickland prejudice. And if we win on Strickland prejudice, we have to win on actual innocence. It's a much higher bar, as the Supreme Court has made clear. And I just want to emphasize what that standard is. It's that it's more likely than not that all 12 jurors wouldn't vote to convict on the basis of the petitioner's evidence. And what we have here is not only the Satterfield confession to Wayne Edwards. We have evidence that objectively corroborates that. It was the same caliber of bullets that Satterfield owned a .44 special gun. And that caliber of bullets was found in the victim's body. There were things that were in the confession that weren't in the search warrant. And Wayne Edwards would have no way to know that Satterfield shot him three times, that the third shot is what brought the victim down, and that the last shot was at close range. And then he was shot in the head. We also have the – we have motive evidence here, testimony from the victim's wife. We also have the fact that Satterfield was leasing a blue car at the time. And that's, in fact, what the Freeman brothers said that they saw. Eric Freeman said he saw a blue car, which actually corroborates the Commonwealth's case here. We also have the fact that Satterfield's – I thought it was a blue or a twig like when he saw a dark car. Eric Freeman said he saw a dark blue car. Grady Freeman said he saw a dark car. And I think it's interesting to note that Eric Freeman changed his testimony three years later and said he saw a white car. The trial court heard all this evidence and found their testimony to be simply incredible. It's not just about their opportunity to view, which was extremely limited in this case, but also the fact that the trial court saw Wayne Edwards testify. He saw the Commonwealth's witnesses. He heard Grady and Eric Freeman testify. And at the end of the day, Your Honors, he made credibility determinations based on seeing these witnesses that we can't see on the basis of a cold record 30 years later. No one saw them. That's the point. No jury saw them. Well, the jury did hear evidence that Eric Freeman had – or that a witness had described the assailant as a white person with blonde hair. And given the fact that Mr. Satterfield's skin color is closer to a white person than an African-American person and the circumstances of the identification were dark, and from half a block away, and happened very quickly, as the trial court said, none of this evidence actually proves anything. What evidence do we have that his skin color is closer to a Caucasian than an African-American? It's actually in the post-trial testimony, Your Honor. The prosecutor was African-American, and he asked Grady Freeman, is Satterfield's skin color closer to mine or closer to Satterfield's lawyer? And he said it's closer to Satterfield's lawyer. Interestingly, Grady Freeman also testified that in describing Satterfield at that hearing, that he's light-skinned, meaning that he actually saw a light-skinned African-American person. On this evidence, we simply just don't have any evidence of innocence, and there is no basis to reopen the judgment. I say that I'm out of time. Thank you. Thank you very much. Mr. Regillian? Thank you, Your Honor. A few points. First, remand is absolutely appropriate here. The district court abused its discretion in precisely the same way that— Remand only on 60 v. 6 as opposed to— Correct, Your Honor. Remand because the district court did not conduct the totality of the circumstances analysis that is required in a 60 v. analysis. All these things would come into play as we've argued, but this is exactly what happened in Cox. The district court sort of just determined that Martinez in that case alone didn't warrant 60 v. relief, so this court said, you know, no, you need to consider the totality of the circumstances. That is straightforward. I also think it's important to consider what the purpose of the actual innocence gateway is. It is merely to allow a petitioner to litigate a claim that he would have been able to freely litigate the first time around but for some procedural mishap. Here, Mr. Satterfield, as a pro se litigant, filing slightly out of time, and he was granted relief on the merits the first time around. So this is not some sort of windfall that Mr. Satterfield is seeking. It is just the opportunity to litigate a constitutional claim the same way habeas petitioners litigate constitutional claims all the time. And third, I think it's important to talk about the actual innocence standard in and of itself. It is true that it is a stringent burden higher than the strickland prejudice burden. There's a whole lot of evidence that you have to concede is against Mr. Satterfield in this case. He claimed he had a gun that was a .44 caliber gun but it was stolen years before he ever reported it. On April 26th, I think he went out and bought .44 caliber bullets. So this is just prior to the person being killed. The person was killed with .44 caliber bullets. And you've got people who saw something going on from some spot away and they said that the person had a dark car or a dark blue car. And clearly there was a significant amount of disrespect shown by the victim toward Mr. Satterfield prior to the incident here. I mean, it's circumstantial but it's a lot of it. I would disagree, Your Honor, respectfully with the characterization of a lot. There is certainly sufficient evidence to have supported the conviction but this is not a sufficiency of the evidence test. It is whether it is likely that a reasonable juror, that any reasonable juror would have a reasonable doubt. And again, I would just ask the court to look. Is that the test on the actual innocence standard? Correct, Your Honor.  And I would ask the court to look at the fact of House. Mr. House goes for a walk at 10.30 p.m. around the time that the victim in that case is killed. He comes back to his house sometime later without a shirt on, sweating, panting heavily, no shoes. He's got the victim's blood on his pants and he lies to the police telling them that he actually had an alibi for the time when this crime took place when in fact he had no alibi. He was out for this walk. So all of those things continue to be true. The only thing out of the things that I mentioned that was even challenged at all was whether the blood was potentially spilled by the lab technician after the fact. But even that was not a certainty. There was plenty of evidence in House that was just not rebutted at all. The other things that they pointed to had to do with another suspect and semen, DNA testing on some semen that did not rebut any of these other factors that strongly inculpated him. And the Supreme Court still found that Mr. House satisfied the standard. Thank you very much. Thank you.